## Burchewsky v. Max Bailis & Sons et al.

*Alexander F. Barbieri*, for claimant.
*Albert C. Richter*, for defendant.

LEWIS, J., August 9, 1939.—The issue involved in this appeal by the State Workmen's Insurance Fund from an order of the Workmen's Compensation Board turns on

interpretation of section 413 of The Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by the Act of June 4, 1937, P. L. 1552. A petition to terminate a compensation award was treated by the board as a petition to modify and compensation for total disability was awarded for a period of about two weeks prior to the filing of the petition during which the board found that in fact only partial (75 percent) disability existed.

Thus, the board found that the disability of claimant changed from total to 75 percent partial on February 18, 1938, but he was entitled to compensation for total disability thereafter until March 4, 1938, the date the petition for termination was filed, and thereafter for 75 percent disability until claimant's subsequent death. In the exceptions error is alleged in the award of compensation for total, instead of partial, disability for this period as contrary to section 413 of the act and as a violation of due process under the Constitutions of the United States and of Pennsylvania.

The pertinent part of section 413 of The Workmen's Compensation Act reads: "Payment must be made up to date of the filing of the petition to terminate, and in the case of a petition to modify, in accordance with the per centum of liability admitted in such petition." The parties and the board appear to accept this sentence as requiring payment of compensation at the rate provided under the agreement or award sought to be terminated or modified up to the date of the filing of the petition to terminate or modify, as the case may be.

The opinion of the Workmen's Compensation Board does not in words adopt that construction, but the result it reached indicates it viewed the act in that way. Claimant contends such a requirement would be entirely reasonable and argues it was included in the act to deter undue delay in the filing of petitions to terminate or modify awards and agreements in workmen's compensation cases.

Can it be a reasonable interpretation which may penalize employers, or their insurance carriers, for not so far anticipating a change in the disability status as to be prepared to file a petition to terminate or modify immediately upon the occurrence of such change?

Compensation payments "are intended as a substitute for wages": Zimmer v. Closky et al., 122 Pa. Superior Ct. 142; and not as penalty for failure of employers to act promptly upon a change of disability; the construction of the act contended for may penalize a delay of even one day between the change of disability and the filing of the petition in that it would require payment of compensation in excess of disability or when no disability exists whether or not defendant has knowledge or means of knowledge of the change in disability on the date of occurrence. To use an expression of the court in Pikutas v. Glen Alden Coal Co., 129 Pa. Superior Ct. 57, "there is something radically wrong with that result", and we do not consider the provision, if it must be so construed, as reasonably within the constitutional powers of the legislature.

This does not require us to hold the provision unconstitutional, however, for if we can construe it reasonably within those powers, it is our duty to do so. It is somewhat inexpertly phrased, but careful analysis convinces us that in its true meaning it does not transcend the bounds of reasonableness. The phrase "and in the case of a petition to modify" in the sentence under consideration is included between commas and can readily be understood as intended to be a parenthetical insertion in the conjunctive to impose upon petitions to modify the same conditions as are imposed upon petitions to terminate. The sentence is to be read as if the word "also" appeared in the clause thus last quoted: "and (also) in the case of a petition to modify." Or as if the sentence in its entirety were: "Payment must be made up to the date of filing a petition to terminate or to modify in accordance

with the percentum of liability admitted in such petition."

This construction is entirely consistent with the obvious meaning of the remainder of section 413 of the act, for in both the preceding and succeeding sentences other conditions are expressed as applying to petitions or actions "to terminate or modify", and they apply alike to petitions to terminate and to petitions to modify. The preceding sentence provides that the filing of either petition shall, under certain conditions, operate as a supersedeas and shall suspend the payment of compensation to such an extent as the facts alleged in the petition would, if proved, require. The sentence here in controversy next requires that payment must be made up to the date of the filing of the petition and in accordance with the percentum of liability admitted therein. The next succeeding sentence treats of the burden of proof, which is the same whether the action be to terminate or to modify.

It requires no finesse of legal reasoning to hold that the act, after specifically providing that payment of the part not admitted to be due shall be suspended under certain conditions upon the filing of a petition to terminate or modify, further specifically provides, instead of leaving to inference and innuendo, that the remaining part, namely that which is admitted to be due, shall be paid up to the date of the filing of the petition. This remaining part is only that portion of the awarded or agreed compensation for which liability is admitted—in other words, that part of the compensation which would not be suspended by the filing of the petition must be paid.

Applying these provisions, as so construed, to the case before us, we find defendant's petition was a petition to terminate and not a petition to modify and admits no liability of any kind for compensation subsequent to February 18, 1938, the date of the alleged termination of the disability, but does admit precedent liability for compensation up to that date, at least by inference, and

avers that such liability as well as that for medical expenses had been discharged by payment.

The petition thus averred, and the board in effect found, that payment had been made up to the date of the filing of the petition *in accordance with the percentum of liability admitted in such petition,* namely, 100 percent up to February 18, 1938, and nothing from that date until the date of filing of the petition. We hold that the act does not require payment of compensation from the date of an alleged termination of liability until the date of the filing of the petition, but only payment of an admittedly due portion of the compensation up to that date. The finding of the Workmen's Compensation Board that claimant's total disability ceased and that only partial disability persisted after that date supports an award of partial compensation from that date, but there is nothing in the act to warrant an award of compensation for total disability during any period after that date, when, according to the finding, total disability did not exist.

The board's finding that 75 percent partial disability existed from February 18, 1938, until claimant's death on August 25, 1938, fixes defendant's liability for compensation for partial disability, and further than this the board should not have gone.

The award of the Workmen's Compensation Board in which defendant and/or defendant's insurance carrier is ordered and directed to pay compensation for total disability from February 18, 1938, to March 4, 1938, then for partial disability until August 25th, is modified to require payment of partial disability only from February 18, 1938, at the rate of partial disability set up in the award, namely 65 percent of 75 percent of $15.67 or $7.64 per week, together with interest at the rate of six percent per annum in accordance with the provisions of section 410 of the act.